(15 App. Div. 525.)

### BROWN et al. v. DENNISON et al.

(Supreme Court, Appellate Division, Second Department. April 6, 1897.)

PARTNERSHIP—RETIREMENT OF PARTNERS—USE OF FIRM NAME.

Defendant purchased his co-partners' interest in the firm, including the good will, under an agreement which provided that none of the parties should use the firm name (D. & B.) without the consent of the others. *Held*, that such agreement did not prohibit defendant from designating himself on his signs and letter heads as "successor to D. & B."

Appeal from special term, Kings county.

Action by Hersey Brown and another against Charles M. Dennison and others for an injunction. From an order granting the injunction, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

A. B. Cruikshank, for appellants.

J. Orlando Harrisson, for respondents.

CULLEN, J. Charles M. Dennison, one of the defendants, and the plaintiffs, Brown and Lent, as partners, for many years carried

on the business of stationers and blank-book manufacturers in the city of New York under the firm name of Dennison & Brown. By their articles of co-partnership it was provided that at the expiration of the partnership term Dennison should have the option of purchasing the interests of the other partners, paying to each the sum which might appear upon the books of the firm to be due him as his share of the assets of the firm; and, in addition thereto, to Brown the sum of $1,200 "for his good will in the said business," and to Lent the sum of one dollar "for his good will in the said business"; and Brown and Lent agreed that on the receipt of such moneys they would give to Dennison "a bill of sale of their entire respective interests and good will in the partnership and business thereby formed." The articles of co-partnership contained this further provision:

"Fifteenth. It is expressly agreed and understood by and between the parties hereto that the term 'good will,' used in article eleventh shall not be so construed as to prohibit the parties hereto from going into a new business or partnership after the dissolution of the co-partnership hereby formed, or to solicit business in competition with the other parties hereto; but none of the parties hereto, nor their successors, shall use the firm name of Dennison & Brown, without the consent of the parties of the first and second parts, their heirs or representatives."

Dennison availed himself of this option, and bought out the interests of his co-partners. He then associated with himself in business the defendants George, Charles, and Robert Dennison, under the firm name of Dennison & Sons. The defendants, on their signs, bills, and letter heads, represented themselves as "Dennison & Sons, successors to Dennison & Brown." The plaintiffs brought this action to restrain the defendants from using in any manner the firm name of Dennison & Brown in connection with their business, and from in any manner holding themselves out as the successors of said firm. The special term granted the injunction as prayed for, and from that order this appeal is taken.

We think it clear that, apart from the provisions of the fifteenth clause of the co-partnership articles above cited, the defendant Charles M. Dennison, by his purchase of the interests of his co-partners in the assets of the partnership and in its good will, acquired the right to represent himself as the successor to the firm of Dennison & Brown. "A purchaser of the good will of a business acquires the right not only to represent himself as the successor of those who formerly carried it on, but also to use the old name, and to prevent other persons from doing the like." Lindl. Partn. p. 445. To same effect, see Browne, Trade-Marks, § 524. In Caswell v. Hazard, 121 N. Y. 484, 24 N. E. 707, it is said by Ruger, C. J.:

"At common law it was undoubtedly the right of such members of a dissolved firm [those who had acquired its good will] having acquired an established reputation for the character and quality of the goods manufactured and sold by them, who desired to continue such business, to continue the former firm name, and transact business thereunder, although none of such parties bore the names contained in the original firm."

This right has been limited by the provisions of our laws relative to doing business under fictitious names, and the right to con-

tinue the use of an old firm name can only be had on compliance with certain statutory requirements. Therefore Dennison, after the purchase from the plaintiffs, could, on complying with the terms of the statute, not only designate himself as the successor of the firm of Dennison & Brown, but could do business under that firm name itself, without referring to himself as its successor.

I do not understand the case of Morgan v. Schuyler, 79 N. Y. 490, as holding a contrary rule. In that case the business of the parties was that of dentists. The defendant had purchased the lease of the place of business, and the interest of his partner in the partnership property and fixtures, but there had been no transfer to him of the good will. It was held that the defendant, by such purchase, did not acquire the right to represent himself as the successor of the firm of Morgan & Schuyler. In the opinion, delivered by Judge Danforth, it is stated that it was understood by both parties that the plaintiff intended not to retire from business, but to open another office. The learned judge says:

"This fact precludes the idea that the defendant acquired any good will in the business, except such as was incident to his sole ownership of the property, mentioned in the agreement. It is evident, therefore, that it was not the intention of the parties that the defendant should, in the conduct of his business, in any manner use the plaintiff's name, either in combination with his own, as 'Morgan & Schuyler,' or in subservience to it, by declaring himself 'the successor' to that firm. It is not claimed that there is any express contract to that effect, and none can be implied, either from the language of the agreement actually made or from any fact or circumstance connected with it."

From this it will appear that the question was not what passed under a sale of the good will, but whether the good will was in fact sold. The case is not authority for the claim that, where one or more retiring partners reserve the right to go into a business on their own account, it precludes the purchaser of the business and good will from using the firm name, or advertising himself as the successor of the firm. In fact, no such reservation is necessary to enable retiring partners to do business on their own account. To prevent that an affirmative covenant on their part to abstain from business is requisite. Lindl. Partn. p. 440.

We have now to consider the effect of the provisions of article 15 of the partnership agreement upon the rights of the parties. So far as these relate to the power of the retiring partners to compete in the business, as already stated, they were unnecessary, but probably inserted for greater caution. Then follows the provision: "None of the parties hereto, nor their successors, shall use the firm name of Dennison & Brown, without the consent of the parties of the first and second parts, their heirs or representatives." We think that the proper construction of this clause prohibited only doing business under the name of Dennison & Brown; a right which, were it not for this provision, the defendants would have had. This only would be "using the name of Dennison & Brown." It was not intended that no party should in any manner refer to his connection with that firm. Persons doing business have the right to state the facts concerning themselves. Thus in Ward & Co.

v. Ward (Sup.) 15 N. Y. Supp. 913, the defendant was a son of Marcus Ward, and had been a member of the firm of Marcus Ward & Co. That firm had transferred its business and good will to a corporation called "Marcus Ward & Company, Limited." It was held that the defendant, on retiring from the corporation, had the right to go into business designating himself as Marcus Ward's son, or "late of the firm of Marcus Ward & Co." In Morgan v. Schuyler, supra, it was said that the defendant might lawfully describe himself as "formerly" or "late" of the firm of Schuyler & Ward, or by similar phrases. So here the plaintiffs have undoubtedly the right to refer to themselves as formerly of the firm of Dennison & Brown, because it is the fact that they were formerly the members of that firm. As to the defendant Charles M. Dennison, he purchased the interests of his partners in a going business. By the terms of the agreement he was to take all the assets of the partnership, including its contracts, and this transfer implied on his part an agreement to carry out all such contracts and discharge all the debts of the partners. For this purpose it would be proper that he should make known that upon him or his firm had devolved the obligations of the old firm. He and his firm are as truly the successors of Dennison & Brown as the plaintiffs are former members of that firm. If the plaintiffs are free to truly state the facts concerning themselves, the defendants have the same right. The defendants could unquestionably state on the bill heads and sign that they had purchased the business of Dennison & Brown as a going business, together with the good will. When they assert that they are the successors of Dennison & Brown, they assert neither more nor less than these facts. The use of the firm name as a name under which the new business should be carried on might impose liabilities on the retiring partners as against creditors against which they wished to guard. This would be a sufficient reason for making the provision, but to forbid any of the parties to make reference to their former connection with the business would serve no useful purpose. In fact, if this clause is thus broadly construed, I do not see that the defendant got much by the purchase of the good will. He would get the stand, but there is nothing to show what the title of the partnership was to the premises where the business had been carried on, whether there was a lease still unexpired, how long the business had been carried on there, or whether there was any value in the stand.

The order appealed from should be reversed, with $10 costs and disbursements, and motion denied, with $10 costs, to abide the event. All concur.