HUGH CHALMERS, JR., Plaintiff, *v.* WILLIAM F. WEED, JAMES F. EGAN, Public Administrator of the County of New York, as Administrator, etc., of OTTO BERNDT, Deceased, WILLIAM W. GOLDSBOROUGH, JR., and WALTER H. CHURCH, Defendants.

Supreme Court, Special Term, New York County, January 8, 1941.

*Larkin, Rathbone & Perry,* for the plaintiff.

*Uniacke & Kelley,* for the defendants.

BENVENGA, J. This is an action for an accounting brought by plaintiff, a limited partner of the firm of Weed, Hall, Berndt & Co. Ancillary thereto, plaintiff prays that a membership upon the Stock Exchange belonging to William W. Goldsborough, Jr., a general partner, be ordered sold and the proceeds applied to the payment of the debts of the partnership and the balance divided among the partners according to their respective rights.

(1) The principal question presented is whether the Stock Exchange membership is a partnership asset, subject to the pay-

ment of the debts of the partnership, including the claim of the plaintiff. This, to a large extent, depends upon the construction of the agreement entered into September 22, 1937, between the parties. This agreement, among other things, provides: " Wm. W. Goldsborough, Jr., * * * agrees to contribute to the partnership the use of his membership in said Exchange and not to sell or otherwise dispose of or impair the said membership during the term of this agreement. However, the said membership shall be *the sole property* of Wm. W. Goldsborough, Jr., and neither the partnership nor the other parties shall have any interest therein, and any increase or decrease in the value thereof shall be for the sole account of Wm. W. Goldsborough, Jr. Nevertheless, the said Wm. W. Goldsborough, Jr., agrees that subject to the Constitution, Rules, Regulations and Practices of the Pittsburgh Stock Exchange, the proceeds of his said membership shall be deemed the asset of the partnership *so far as may be necessary for the protection of the creditors of the partnership.*"

Clearly, under the agreement, Goldsborough contributed to the partnership the " use " of his Stock Exchange membership for a limited purpose. The seat became a partnership asset, subject to the payment of partnership debts, for the purpose specified in the agreement. It did not become subject to the repayment of plaintiff's capital contribution. (*Matter of Strassburger*, 12 F. Supp. 420, 422, 423; *Matter of Amy*, 21 F. [2d] 301, 303.)

(2) Subsequent to the execution of the agreement in question, plaintiff was asked to contribute additional capital to the partnership. He did so. Still later, plaintiff was pressed for a further contribution. At first, he declined; whereupon (according to the plaintiff) Goldsborough stated that plaintiff was " perfectly secure;" that he was " guaranteed from loss by the partnership," and that he had " the security of the seat." Plaintiff claims that, relying upon these representations, he contributed additional capital. These additional contributions were subsequently repaid. The original contribution, however, remains unpaid.

Is this testimony admissible? The alleged representations having been orally made, they are inadmissible to contradict, vary, add to, or subtract from, the terms of the written agreement. (*Hendricks* v. *Clements*, 195 App. Div. 144, 149, 150; *Sayer* v. *Sunderland*, 219 id. 615, 617.)

It is contended, however, that the testimony is admissible as evidence of an estoppel; that Goldsborough, by reason of his alleged representations, is estopped to assert that his membership is not security for the repayment of plaintiff's capital. In support of his argument, plaintiff relies upon the *Strassburger* case (*supra*).

In that case, a limited partner was induced by a general partner not to withdraw his capital from the partnership on the representation that the general partner's seat on the Stock Exchange was a partnership asset, and subordinate to the interest of the limited partner. It was held that the general partner was estopped to claim that the membership was not a firm asset, where the limited partner sustained loss from leaving the capital in the partnership (pp. 423–425).

But the *Strassburger* case is distinguishable. In the first place, the articles of agreement in that case " were not so explicit on their face that a layman must have construed them as excluding the seat from the firm assets " (p. 424). In the instant case the agreement is so clear and explicit that, assuming the representations were made, it is difficult to believe that plaintiff relied upon them. Moreover, assuming that plaintiff relied upon the representations, they were made to induce him to make the additional contributions, which, as we have seen, were repaid. Under the circumstances, the doctrine of estoppel is inapplicable.

The estoppel can be invoked only with respect to the transaction involving the additional contributions, and cannot be made to relate back to the plaintiff's original contribution to the capital. " No estoppel arises in any case where there has been no act done and no change of position in reliance upon an untrue representation." The plaintiff's position with respect to transactions before the making of the alleged representations " is exactly the same as if no such representation had been made." (*Wills* v. *Investors Bankstock Corp.*, 257 N. Y. 451, 458; *Hopwood Plays, Inc.*, v. *Kemper*, 263 id. 380, 384; 21 C. J. 1133, § 134; Id. 1200, § 199.)

(3) The argument is made that, upon the execution of the agreement of March 26, 1938, the plaintiff became a " creditor " of the firm within the meaning of that provision of the agreement of September 22, 1937 (hereinabove quoted), which makes the proceeds of the membership a partnership asset " as far as may be necessary for the protection of the creditors of the partnership."

The March, 1938, agreement was made after plaintiff's additional capital contributions had been repaid. It provided for the repayment of plaintiff's original capital contributions on definite and fixed dates thereafter. It is asserted that the plaintiff entered into this agreement for the repayment of his original capital contribution " as a withdrawing partner," and, therefore, became entitled to receive " as an ordinary creditor " under section 73 of the Partnership Law. This section provides in substance that, when a partner retires and the remaining partners continue the business without any settlement of accounts between them, the retiring partner

may have the value of his interest ascertained as of the date of dissolution, and shall receive " as an ordinary creditor " an amount equal to the value of that interest, although the creditors of the partnership and of the retiring partner are entitled to priority. But there is nothing in the agreement to warrant the inference that the plaintiff entered into it as a retiring partner in accordance with the provision of section 73 of the Partnership Law. On the contrary, the agreement merely amended the articles of copartnership, recognizing and treating the plaintiff as a continuing partner, with an active interest in the business and a voice in its management. To hold, therefore, that the plaintiff is entitled to receive as an ordinary creditor under the provisions of the Partnership Law is to rewrite the agreement for the parties. This, of course, cannot be done.

Judgment is directed for the defendants and the complaint is dismissed on the merits. Settle judgment.